DECISION AND JOURNAL ENTRY
Appellant Lisa Whipple has appealed from a judgment of the Summit County Common Pleas Court, Juvenile Division, that placed her daughters, Ida and Janie Coffee, in a planned permanent living arrangement (PPLA) and that granted permanent custody of her son, Joseph Whipple, to the Summit County Children Services Board (CSB). This Court affirms.
 I.
Lisa and Nathaniel Whipple are the parents of Nathaniel Coffee, Ida Coffee, Janie Coffee, and Joseph Whipple. During June 1999, the juvenile court ordered Nathaniel to be placed in a PPLA and granted CSB legal custody of Nathaniel.[1] On July 15, 1999, CSB moved for permanent custody of Ida, Janie and Joseph. Subsequently, Mr. and Mrs. Whipple separately moved the juvenile court to grant them legal custody of the children.
After a hearing on the motions, the juvenile court granted CSB's motion for permanent custody of Joseph. However, the juvenile court denied CSB's motion for permanent custody of Ida and Janie and, instead, placed them in a PPLA and granted legal custody of the children to CSB. Mrs. Whipple timely appealed the juvenile court's determination as to Ida, Janie and Joseph, asserting two assignments of error.
 II.
First Assignment of Error
 The trial court erred to the prejudice of [Mrs. Whipple] and abused its discretion in placing Ida Coffee and Janie Coffee in a planned permanent living arrangement, where [Mrs. Whipple] had moved that legal custody of the children be returned to her.
Second Assignment of Error
 The trial court erred to the prejudice of [Mrs. Whipple] and abused its discretion in awarding permanent custody of Joseph Whipple to Children Services Board where [Mrs. Whipple] had moved that legal custody of the child be returned to her.
 Because her assignments of error are related, this Court will address them together. Essentially, Mrs. Whipple has asserted that the juvenile court abused its discretion when it granted permanent custody of Joseph to CSB and when it placed Ida and Janie in a PPLA. This Court disagrees.
In this case, CSB moved the juvenile court to terminate Mr. and Mrs. Whipple's parental rights and to grant it permanent custody of Ida, Janie, and Joseph. Termination of parental rights is an alternative of last resort; however, it is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child who is neither abandoned nor orphaned, it must find by clear and convincing evidence that the grant of permanent custody to the agency is in the best interest of the child, and that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. See In re William S.
(1996), 75 Ohio St.3d 95, 99; see also, R.C. 2151.41.4(B)(1). When determining whether a grant of permanent custody is in the best interest of the child, the juvenile court should:
 [C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
 R.C. 2151.41.4(D)(1) through (5). When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the sixteen factors enumerated in R.C. 2151.41.4(E) exist as to each of the child's parents. See In re William S., 75 Ohio St.3d at 99. Those factors are:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time * * *[;]
 (3) The parent committed any abuse as described in section 2151.03.1 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 (6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25, 2907.31, 2907.32, 2907.32.1, 2907.32.2, 2907.32.3, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11
of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.41.2 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
 (11) The parent has had parental rights terminated pursuant to section 2151.35.3, 2151.41.4, or 2151.41.5 of the Revised Code with respect to a sibling of the child.
 (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 (15) The parent has committed abuse as described in section 2151.03.1 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
(16) Any other factor the court considers relevant.
 The juvenile court should consider all relevant evidence when making such a determination. R.C. 2151.41.4(E).
At the hearing in this matter, CSB presented testimony establishing the family's history with CSB. During 1987, CSB received permanent custody of Athena Coffee, one of Mrs. Whipple's children from a prior relationship, when the child was two months old. At that time the child was living with her father, and CSB was unable to locate Mrs. Whipple for over a year.
Since 1993, CSB received six substantiated referrals on the family alleging neglect and/or abuse. CSB's most recent involvement was based on Mr. Whipple's physical abuse of Nathaniel. During February 1997, CSB received a referral that Mr. Whipple had physically abused Nathaniel. After a court hearing in May 1997, the juvenile court adjudicated Ida, Janie, and Joseph dependent and adjudicated Nathaniel abused and dependent. As a result of that abuse, the court ordered Mr. Whipple out of the home and returned the children to Mrs. Whipple. Further, as a result of CSB's involvement, the juvenile court placed Nathaniel in a PPLA.
During May 1998, CSB became aware that Mr. Whipple had moved back into the home in July 1997, in violation of juvenile court's protective order. As a result, the juvenile court found Mr. and Mrs. Whipple in contempt of court and sentenced both of them to serve three days in the county jail. On June 26, 1998, Nathaniel, Ida, Janie and Joseph were again adjudicated dependent. The juvenile court returned Ida, Janie, and Joseph to Mr. and Mrs. Whipple with an order of protective supervision; however, CSB was granted temporary custody of Nathaniel.
CSB again received emergency temporary custody of Ida, Janie, and Joseph during December 1998. At the December review hearing, the juvenile court became aware of an incident in the Whipple's home, in which a prostitute was assaulted by her pimp. A CSB caseworker testified that the children were present during the incident and were frightened. The court also became aware that Mrs. Whipple had tested positive for cocaine while she had custody of the children. Additionally, while the children were in the Whipple's custody from June 1998 to December 1998, Ida missed eighteen days of school and Janie missed fourteen and a half days of school due to having lice. Finally, the court was informed of Mr. Whipple's continued use of alcohol in the home.
On December 4, 1998, the juvenile court ordered CSB to move for temporary custody of Ida, Janie, and Joseph and granted CSB emergency temporary of the children. The children were returned to CSB's custody on December 18, 1998. During June 1999, the juvenile court ordered Nathaniel to be placed in a PPLA and granted CSB legal custody of him.
CSB presented evidence that overall, both parents had made some strides in their case plans, but they had not satisfactorily addressed some issues. Even though Mr. and Mrs. Whipple attended the programs required by the case plan, the problems with domestic violence, alcohol, and criminal activity had not been remedied. Mr. and Mrs. Whipple have exhibited periods of stability in their lives; however, those periods are short-lived.
On November 25, 1998, CSB filed case plans for both parents. Mr. Whipple's case plan objectives were: 1) to show respect to all authority and law officials, 2) to lead a drug and alcohol free life, 3) to address anger control and domestic violence issues, and 4) to demonstrate appropriate non-physical forms of discipline. Mrs. Whipple's case plan objectives were: 1) to show respect for all authority and law officials, 2) to lead a drug and alcohol free life, 3) to address domestic violence issues, and 4) to demonstrate stability by maintaining clean, safe housing as well as properly managing her budget.
Between 1976 and 1998, Mr. Whipple had been arrested twenty-six times for crimes such as domestic violence, disorderly conduct, intoxication, petty theft, and contempt of court. On November 23, 1992, Mrs. Whipple was convicted of grand theft and trafficking food stamps. On April 23, 1998, Mrs. Whipple was again convicted of grand theft and trafficking food stamps. Further, CSB presented evidence of approximately seven 911 calls that had been made from the Whipple household between February 1997 to October 1998 revolving around physical and/or verbal domestic disputes.
As required by the case plan, Mr. Whipple attended individual counseling and completed a parenting program as a part of his involvement with the Community Drug Board. The instructor of the course noted that Mr. Whipple attended all of the classes, was very active during the classes, and appeared very interested in the subject matter. He also attended a three-month course, the Primary Intervention Program through the Community Drug Board.
Mrs. Whipple has complied with her case plan objective of remaining drug free; however, CSB workers were concerned because she was not involved in the Exodus After-Care Program. Such programs are recommended because cocaine is a highly addictive drug. Mrs. Whipple did report that she was attending Narcotics Anonymous meetings at the Community Drug Board. Additionally, parenting workers were also going to the home to attempt to work with Mr. and Mrs. Whipple; however, Mrs. Whipple threw them out of the house. Mr. and Mrs. Whipple were to attend marriage counseling; however, they only attended four sessions because Mrs. Whipple refused to continue.
Despite their efforts in complying with their case plans, and after receiving counseling and treatment, Mr. and Mrs. Whipple were still having difficulties dealing with their domestic violence issues and respecting orders of the court. During April 1999, the police were called to the Whipple residence regarding a domestic dispute in which Mr. Whipple was the victim. On April 27, 1999, Mrs. Whipple pled guilty to the domestic violence charges. Mrs. Whipple was ordered to leave the home and a protective order was issued. Mrs. Whipple later violated that protective order by returning to the home.
Approximately two weeks prior to the hearing in this matter, two other domestic disputes occurred in the home for which the police were called. CSB was also concerned with Mr. Whipple's continued use of alcohol. Although his drug screens were all negative, Mr. Whipple admitted to CSB workers that he was still drinking on a regular basis. CSB also presented evidence that alcohol screens were less reliable than drug screens because alcohol moves through the system very quickly. Moreover, Mrs. Whipple expressed concerns to CSB workers regarding Mr. Whipple's continued use of alcohol.
Additionally, CSB presented evidence that Ida and Janie's behavior improved vastly since they have been in foster care. Both of the children had previously been suspended and or expelled from school for behavior problems and fighting. Since being placed in foster care, the girls have not gotten into any fights and have been more respectful. When taken from their parents in May 1998, the girls ran away often to return to their parents.
The testimony presented at the hearing established that Ida and Janie love their mother very much. They do not seem to like their father. They do not seem to respect their parents; therefore, they tend to be more unruly around their parents. Both have expressed a desire to return to their parents. They love their foster mother and respond well to her directions. Their foster mother has facilitated additional visits by taking the girls to visit their parents.
Joseph does not have much separation anxiety. He is very bonded with his foster mother. They have a very affectionate and positive interaction. Although Joseph does have a slight bond with his parents, CSB workers did not think the bond would hinder his ability to adjust to adoption.
Finally, the guardian ad litem presented an oral report for the court. The guardian had been involved with the family for approximately two years. The guardian was opposed to the motion for permanent custody with regard to Janie and Ida. The guardian believed that the girls were so strongly attached to their parents that a termination of the relationship would be very painful for them and would cause them to be angry. In contrast, the guardian did not believe that the girls would be safe if they would be returned to their parents. With regard to Joseph, the guardian testified that Joseph was not attached to his parents because Joseph had spent the majority of his life with foster families. The guardian supported CSB's motion for termination of parental rights with respect to Joseph.
After reviewing the record, this Court concludes that the juvenile court's determination that termination of Mr. and Mrs. Whipple's parental rights with respect to Joseph was supported by clear and convincing evidence. CSB presented sufficient evidence that Joseph could not be placed with his parents within a reasonable time or should not be placed with his parents and that termination of parental rights was in Joseph's best interest. Accordingly, the juvenile court did not err when it terminated Mr. and Mrs. Whipple's parental rights with respect to Joseph.
Mrs. Whipple has asserted that the juvenile court erred when it determined that it was in Ida and Janie's best interest to place them in a PPLA pursuant to R.C. 2151.35.3(A)(5). Specifically, she has asserted that CSB failed to present evidence that she was suffering from significant physical, mental or psychological problems and that she was unable to care for the children due to those problems.
In a PPLA, the juvenile court grants a children services agency legal custody of a child without terminating the parent's parental rights. R.C. 2151.01.1(B)(27). The children service agency is then permitted to make an appropriate placement for the child and to enter into a written agreement regarding that placement. Id. Prior to placing the child in a PPLA, the juvenile court must find, by clear and convincing evidence, that a PPLA is in the best interest of the child and, as applicable to this case, that:
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.41.4 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
R.C. 2151.35.3(A)(5). "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." In reMurphy (April 9, 1997), Summit App. No. 17958, unreported at 3, quoting State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
CSB presented significant evidence that Mr. and Mrs. Whipple had serious, recurring issues with domestic disputes and alcohol. Despite efforts of CSB and the parents, the domestic disputes were still occurring, even as recent as two weeks prior to the hearing. Additionally, the juvenile court had before it considerable evidence of Mr. and Mrs. Whipple's inability to comply with the law as well as orders of the court. This Court concludes that the juvenile court had before it sufficient evidence to determine that Mr. and Mrs. Whipple suffered from significant mental problems which prevented them from caring for their children and that a PPLA was in the best interests of the children. Accordingly, Mrs. Whipple's first and second assignments of error are overruled.
 III.
Mrs. Whipple's assignments of error are overruled. The judgment of the juvenile court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
FOR THE COURT SLABY, P.J., CARR, J., CONCUR.
[1] No appeal was filed from that order.